1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

| | |
|---|---|
| JULIE C.,<br><br>    Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>    Defendant. | Case No. 2:18-cv-00311-RSM-TLF<br><br>REPORT AND<br>RECOMMENDATION<br><br>NOTED FOR FEBRUARY 22, 2019 |

15        Julie C. has brought this matter for judicial review of defendant's denial of her

16  applications for disability insurance and supplemental security income (SSI) benefits. This

17  matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v.*

18  *Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons

19  set forth below, the undersigned recommends that the Court affirm defendant's decision to deny

20  benefits.

21                          PROCEDURAL BACKGROUND

22        Plaintiff filed applications for disability insurance and supplemental security income

23  benefits in February 2010, alleging she became disabled as of May 1, 2008. Dkt. 8,

24  Administrative Record (AR) 910. Both applications were denied at the initial and reconsideration

25

REPORT AND RECOMMENDATION - 1

1  administrative review levels. *Id.* After a hearing, an administrative law judge (ALJ) issued an

2  unfavorable decision on May 25, 2012. *Id.* Plaintiff appealed, and this Court affirmed the ALJ's

3  decision at steps one through four. *Id.* It reversed and remanded due to error in the vocational

4  analysis at step five. *Id.*; AR 1045, 1047-60.

5      On remand, the ALJ held another hearing. AR 963-1000. In a written decision, the ALJ

6  separated the period starting from the alleged onset date to his prior decision (May 1, 2008, to

7  May 25, 2012) from the period starting from his prior decision to the present. For the first period,

8  the ALJ considered only the vocational analysis at step five, and again found plaintiff could

9  perform jobs in the national economy and therefore was not disabled. AR 914-17. Plaintiff does

10  not challenge this determination. Dkt. 13, p. 4.

11     For the second period, the ALJ performed the five-step sequential analysis. AR 917-35.

12  He determined that there were jobs existing in significant numbers in the national economy that

13  plaintiff could perform, and therefore that she was not disabled. AR 17-28. Plaintiff filed a

14  complaint with this Court, seeking reversal and remand for an award of benefits for this period.

15                          STANDARD OF REVIEW

16     The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error;

17  or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648,

18  654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might

19  accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir.

20  2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir.

21  1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the

22  evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

23     The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759

24  F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports,

25

REPORT AND RECOMMENDATION - 2

1 and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the

2 decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified

3 by the ALJ are considered in the scope of the Court's review. *Id.*

### ISSUES FOR REVIEW

1. Did the ALJ err in not finding plaintiff's left-hand condition a severe impairment at step two?

2. Did the ALJ err in rejecting opinions from plaintiff's treating physician?

### DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner assesses a claimant's residual functional capacity (RFC) to determine – at step four -- whether the claimant has the ability to perform past work; if the claimant cannot perform past relevant work then the ALJ reviews (at step five) whether the claimant can adjust to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The Commissioner has the burden of proof at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The Commissioner can meet this burden by showing that a significant number of jobs that the claimant can perform exist in the national economy. *Id.*; 20 C.F.R. §§ 404.1520(e), 416.920(e).

1.    The ALJ's Step Two Determination

At step two of the sequential evaluation process, the ALJ must determine whether an impairment is "severe." 20 C.F.R. § 416.920. In this case, the ALJ determined that plaintiff had severe impairments of callus formation of the bilateral feet, lower back pain/degenerative disc disease, left knee pain, right shoulder weakness, insomnia, major depressive disorder, PTSD, personality disorder, and gender identity disorder. AR 917. Plaintiff contends that the ALJ erred in failing to find her left hand condition to also be a severe impairment at step two.

1      An impairment is not "severe" if it does not "significantly limit" a claimant's mental or

2  physical abilities to do basic work activities. 20 C.F.R. § 416.920(c); Social Security Ruling

3  (SSR) 96-3p, 1996 WL 374181, at *1. Basic work activities are those "abilities and aptitudes

4  necessary to do most jobs." 20 C.F.R. § 416.922(b); SSR 85-28, 1985 WL 56856, at *3. An

5  impairment is not severe if the evidence establishes only a slight abnormality that has "no more

6  than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856, at *3;

7  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th

8  Cir. 1988).

9      The step two inquiry is a *de minimis* screening device used to dispose of groundless

10  claims. *Smolen*, 80 F.3d at 1290. The Ninth Circuit recently emphasized in *Buck v. Berryhill* that

11  this inquiry "is not meant to identify the impairments that should be taken into account when

12  determining the RFC." 869 F.3d 1040, 1048-49 (9th Cir. 2017) (rejecting claim that ALJ erred

13  after second hearing, where ALJ found new severe impairments but did not change RFC). The

14  court noted that an ALJ assessing a claimant's RFC before steps four and five "must consider

15  limitations and restrictions imposed by all of an individual's impairments, even those that are not

16  'severe.'" *Id.* at 1049 (citing Titles II & XVI: Assessing Residual Functional Capacity in Initial

17  Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)).

18  Thus, the RFC "should be exactly the same regardless of whether certain impairments are

19  considered 'severe' or not" at step two. *Id.* In *Buck,* the Ninth Circuit concluded that because the

20  ALJ decided step two in the claimant's favor and was required to consider all impairments in the

21  RFC, whether "severe" or not, "[a]ny alleged error is therefore harmless and cannot be the basis

22  for a remand." *Id.* (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

23      The same is true here. Because the ALJ decided step two in plaintiff's favor, the ALJ was

24

25

REPORT AND RECOMMENDATION - 4

1    required to consider evidence of any and all impairments, severe or not, in assessing plaintiff's

2    RFC.

3        Some courts have distinguished *Buck* on the basis that the ALJ's RFC analysis showed

4    that the ALJ did not consider certain impairments in the RFC after finding them non-severe at

5    step two. *See Mercado v. Berryhill*, No. 16-CV-04200-BLF, 2017 WL 4029222, at *6 (N.D. Cal.

6    Sept. 13, 2017); *Winkle v. Berryhill*, No. C17-1633 TSZ, 2018 WL 5669018, at *2 (W.D. Wash.

7    Nov. 1, 2018). Here, the ALJ's decision shows he considered plaintiff's left-hand condition in

8    the RFC assessment. AR 929. In particular, the ALJ considered the opinion of plaintiff's treating

9    physician that plaintiff's left-hand condition caused functional limitations. *Id.* Accordingly, to

10   the extent plaintiff contends that the ALJ erred in failing to incorporate impairments from her

11   left-hand condition in her RFC, her argument is addressed below.

12

         2.    The ALJ's Consideration of Medical Opinion Evidence

13
         Plaintiff challenges the ALJ's decision, in assessing plaintiff's RFC, to discount her

14
     treating physician's opinions about her physical limitations. The Court should find that the ALJ

15
     gave adequate and supported reasons to discount those opinions.

16
         a.    Dr. Clure's Opinions

17
         Plaintiff's treating physician, Barbara Clure, M.D., completed several evaluations of

18
     plaintiff's physical impairments between December 2012 and July 2016. *See* AR 1610, 1741,

19
     1790, 1897, 1999.

20
         On each evaluation form, Dr. Clure listed in the space for diagnostic test results a January

21
     2010 knee X-ray, an April 2011 lumbar spine X-ray, and a July 2011 lumbar spine MRI. AR

22
     1611, 1740, 1791. Her later evaluations also listed a July 2014 knee MRI. AR 1898. Dr. Clure's

23
     notes acknowledged that these tests all showed normal results. *See* AR 1611 (noting "small

24

25

1  shallow disc protrusion . . . not resulting in any neural impingement" in MRI), 1740, 1791.

2  Although Dr. Clure did not evaluate plaintiff's range of motion in her joints in the first

3  evaluation, she did so in subsequent evaluations. *See* AR 1613, 1737, 1793.

4      Dr. Clure listed similar diagnoses at each evaluation. These included low back pain or

5  sciatica, knee pain, shoulder pain, and hand pain (alternately called tendon damage, dysfunction,

6  and disability), as well as "PTSD/transgender issues." AR 1611, 1740, 1791 1898.

7      From 2011 to 2014, Dr. Clure opined that each of these conditions had mild-to-moderate

8  effects on all of plaintiff's physical work functions and together would limit plaintiff to sedentary

9  work. AR 1611, 1740, 1791. In 2016, Dr. Clure opined that plaintiff would be more limited than

10 before, indicating that plaintiff's back pain (sciatica) and left knee pain would have moderate-to-

11 marked impacts on her work functions, while shoulder pain would have a mild-to-moderate

12 impact. AR 1898. (Dr. Clure also indicated that "PTSD/transgender" would have a marked-to-

13 severe impact. AR 1740, 1898.) Dr. Clure opined that plaintiff was limited to less than sedentary

14 work. AR 1899. Later in 2016, Dr. Clure completed a medical source statement reiterating that

15 plaintiff had severe functional limitations. AR 2000-02. She added, however, that plaintiff's

16 "main disability is related to PTSD due to trauma related to transgender status. [Plaintiff] also w/

17 severe depression plus Dr. Young for mental health treatment." AR 2003.

18          b.      ALJ's Burden in Rejecting Dr. Clure's Opinions

19      In general, more weight is given to a treating physician's opinion than to the opinions of

20 those who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). On

21 the other hand, an ALJ need not accept the opinion of a treating physician if that opinion is brief,

22 conclusory, and inadequately supported by medical findings or by the record as a whole. *Batson*

23 *v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

24

25

1    The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

2    opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th

3    Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even

4    when a treating or examining physician's opinion is contradicted, an ALJ may only reject that

5    opinion "by providing specific and legitimate reasons that are supported by substantial

6    evidence." *Id.*

7    Here, most of Dr. Clure's opinions were contradicted by the opinions of Dr. Hoskins. *See*

8    AR 1106-07. Accordingly, the ALJ was required to give specific and legitimate reasons to

9    discount those opinions.

10    Dr. Hoskins's opinion did not contradict Dr. Clure's opinions on plaintiff's left-hand

11    limitations. *See* AR 1107 (finding plaintiff "Limited Left" in both fine and gross manipulation).

12    Accordingly, the ALJ needed to give clear and convincing reasons to discount Dr. Clure's

13    opinions on plaintiff's left-hand limitations. *See Trevizo*, 871 F.3d at 675.

14                    c.    ALJ's Analysis of Dr. Clure's Opinions

15    The ALJ gave "less weight" to Dr. Clure's opinions than to those of the state-agency

16    consulting physician, Robert Hoskins, M.D. AR 928-29. The ALJ reasoned that "Dr. Clure failed

17    to support her opinions with sufficient objective evidence, and the overall record does not

18    contain evidence consistent with her opinions." *Id.* He gave several reasons for this finding. AR

19    929.

20    First, the ALJ found that the objective basis Dr. Clure cited for her opinions—left knee

21    X-rays, a left knee MRI, back X-rays, and a back MRI—"suggests less limitation" than Dr. Clure

22    indicated. Second, the ALJ found that the record "does not contain imaging or other objective

23    findings that fully explains" plaintiff's presentation to Dr. Clure with a limp and reduced range

24    of motion. Third, the ALJ found that plaintiff's "back and knee conditions required only the most

25

REPORT AND RECOMMENDATION - 7

1    conservative of treatment." Fourth, the ALJ found that the medical evidence "also shows few, if

2    any, objective findings of right shoulder abnormalities;" nor does it show a severe impairment in

3    the left shoulder. And fifth, the ALJ found that Dr. Clure's examinations show no objective

4    findings that would support the left-hand limitations.

5         In this discussion, the ALJ gave specific and legitimate reasons to discount Dr. Clure's

6    opinions on plaintiff's limitations from her knee, back, and shoulder conditions. Substantial

7    evidence supports those reasons.

8         First, the ALJ validly considered the lack of objective support for Dr. Clure's opinions.

9    An ALJ may reject a medical opinion based on a lack of support from objective evidence in the

10   record and a determination that conflicting medical opinions are entitled to greater weight. *See*

11   20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a

12   medical opinion, particularly medical signs and laboratory findings, the more weight we will

13   give that medical opinion."). An ALJ may reject a treating doctor's form opinion that is brief,

14   conclusory, and inadequately supported. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

15        Here, the record supports the ALJ's finding that the objective evidence "suggests less

16   limitation" than Dr. Clure opined. AR 929. Dr. Clure cited left-knee X-rays, a left-knee MRI,

17   lower-back X-rays, and a lower-back MRI. AR 1611, 1740, 1791. The record supports the ALJ's

18   finding that these imaging tests showed very few abnormal results: the 2014 left knee MRI found

19   "Negative MRI . . . with no evidence of internal derangement." AR 1825, 1909; *see* AR 492, 509

20   (2010 left-knee X-ray "was reported normal"). The 2011 lumbar spine X-ray showed "Small

21   shallow central disc protrusion . . . not resulting in any neural impingement." AR 1911.

22        Plaintiff acknowledges these unremarkable imaging results, but she contends that the ALJ

23   ignored other evidence that is also objective and did support Dr. Clure's opinions. Dkt. 13, p. 11.

24

25

REPORT AND RECOMMENDATION - 8

1    The evidence plaintiff cites consists primarily of results on exams measuring the range of motion

2    in plaintiff's joints. *Id.*; AR 1635-36, 1738, 1793, 1843, 1858, 1900-01, 1905. Plaintiff also

3    points to Dr. Clure's observations at treatment visits of crepitence, pain, and "laxity over the

4    collateral ligament" in plaintiff's left knee. AR 1575, 1843, 1858, 1905.

5        Dr. Clure did not refer to any of these findings in her form opinions. She also indicated

6    that plaintiff's "main disability" is psychological. AR 2003. Moreover, even if the ALJ could

7    have rationally concluded that the range of motion results and observations of crepitence, pain,

8    and laxity supported Dr. Clure's opinions about limitations from plaintiff's back, knee, and

9    shoulder conditions, substantial evidence supports the ALJ's conclusion to the contrary. *See*

10   *Allen*, 749 F.2d at 579.

11       As the ALJ found, the objective testing was consistent with Dr. Hoskins's opinions that

12   plaintiff has less severe physical limitations. *See* AR 929, 1106-07. Thus, the notes plaintiff cites

13   do not undermine the substantial evidence for the ALJ's finding. *See Shaibi v. Berryhill*, 883

14   F.3d 1102, 1108 (9th Cir. 2017) ("'Where evidence is susceptible to more than one rational

15   interpretation, it is the ALJ's conclusion that must be upheld.' . . . As we cannot say that the

16   ALJ's interpretation of the available evidence was not rational, the ALJ's conclusions were

17   supported by substantial evidence." [citation omitted]); *see also* 20 C.F.R. § 416.927(c)(3) (part

18   of "supportability" factor in weighing doctor's opinion is the quality of explanation the doctor

19   provides).

20       Moreover, plaintiff does not challenge an additional reason the ALJ gave for discounting

21   Dr. Clure's opinion: that plaintiff's "back and knee conditions required only the most

22   conservative of treatment." This is a specific and legitimate reason to discount a treating

23   physician's opinion. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that

24

25

REPORT AND RECOMMENDATION - 9

1    conservative treatment for back injury was clear and convincing reason to disregard testimony

2    that claimant was disabled). The record supports the ALJ's reasoning here, as it shows that

3    plaintiff has received treatment in the form of ibuprofen and Tylenol, Gabapentin for nerve pain,

4    and other medications for muscle spasms. *See* AR 1534, 1549, 1577, 1587, 1628, 1683, 1690;

5    *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (holding ALJ reasonably

6    discounted a treating physician's opinion where conservative treatment was inconsistent with

7    symptoms one would expect if claimant was disabled).

8         The ALJ also gave a specific and legitimate reason to discount Dr. Clure's opinion on

9    limitations from plaintiff's shoulder condition. The record supports the ALJ's finding that the

10    medical evidence "shows few, if any, objective findings of right shoulder abnormalities" and

11    does not show a severe impairment in the left shoulder. AR 929. Plaintiff contends only that the

12    ALJ did not properly consider Dr. Clure's range of motion findings for her shoulder. Dkt. 13, p.

13    11. Dr. Clure found in 2014 that plaintiff had full range of motion in both shoulders, except that

14    abduction in her right shoulder was limited to 130 degrees of a normal 150. AR 1738. In 2016,

15    Dr. Clure found that plaintiff had full range of motion on the right, but on the left was limited to

16    110 of 150 degrees abduction, 40 of 50 degrees extension, and 110 of 150 degrees flexion. AR

17    1901. In the RFC, the ALJ found that plaintiff was "limited to occasional overhead reaching,"

18    AR 922. The testing plaintiff points to does not undermine the substantial evidence supporting

19    this limitation.

20         In short, in finding Dr. Clure's opinions inconsistent with the objective evidence and

21    plaintiff's conservative treatment, the ALJ gave specific and legitimate reasons for discounting

22    Dr. Clure's opinions regarding limitations from plaintiff's knee, back, and shoulder conditions.

23    *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

24

25

1    Next, the ALJ gave two clear and convincing reasons to discount Dr. Clure's opinions

2    about limitations to plaintiff's use of her left hand.

3    First, the ALJ found that "Dr. Clure's opinions and examinations show no range of

4    motion findings[,] deficits[,] or other evidence consistent with *significant* restrictions" to

5    plaintiff's use of her left hand. AR 929 (emphasis added). Likewise, in his step-two discussion,

6    the ALJ found that plaintiff's pain "causes little functional impairment," citing notes showing

7    "few abnormalities" other than reduced strength, which later improved. AR 918 (citing AR 1637,

8    1978).

9    Support from the types of objective evidence the ALJ cited is a key consideration in

10   weighing medical opinions. *See* 20 C.F.R. § 416.927(c)(3); *Batson v. Comm'r, Soc. Sec. Admin.*,

11   359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discount a medical opinion that is not adequately

12   supported by objective medical findings). It is not a sufficient reason on its own to discount a

13   treating physician's medical opinion. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); SSR

14   96-2p (effective for claims filed before March 27, 2017).

15   Plaintiff points to findings that she had tenderness in the third and fourth metacarpals of

16   the left hand and a scar on two fingers, AR 1637, notes indicating her hand was uncoordinated

17   and a "little weak," and objective findings of 4/5 grip strength. AR 1576, 1769, 1843. Later in

18   the period, those findings increased to "4+/5" grip strength. AR 1905, 1978, 2007.

19   Substantial evidence supports the ALJ's findings, as he could rationally conclude that the

20   treatment record contains no indication that plaintiff's left-hand use is significantly limited. *See*

21   AR 1576, 1769-70, 1843 (finding 4/5 grip strength, "some limits" due to earlier surgery); AR

22   1905, 1978, 2007 (more recent records finding "4+/5" grip strength). The evidence plaintiff cites

23   does not undermine that substantial evidence. Even if plaintiff's proposed interpretation of this

24

25

REPORT AND RECOMMENDATION - 11

1 | evidence is rational, "[w]here evidence is susceptible to more than one rational interpretation, it

2 | is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

3 | 2005).

4 |         Second, the ALJ found that, for reasons he discussed at step two, "the overall record

5 | (including the claimant's work history and testimony) indicates that the left hand symptoms do

6 | not constitute a severe impairment." AR 929. The ALJ thus incorporated his step-two discussion

7 | of plaintiff's left-hand condition into his RFC analysis. *Kennedy v. Colvin*, 738 F.3d 1172, 1178

8 | (9th Cir. 2013) (ALJ must discuss and evaluate evidence that his conclusion but is not required

9 | to do so under a specific heading). In that discussion, the ALJ found that plaintiff worked with

10 | her left-hand condition; this was based on an inference that plaintiff worked with her left-hand

11 | condition. AR 918. He based this on plaintiff's statement that her pain was due to an injury that

12 | required surgery when she was 18 years old, AR 2000, and evidence that "she worked full-time

13 | for many years after that," including as an upholsterer and a farmhand. AR 918 (citing AR 285,

14 | 1479).

15 |         Substantial evidence supports this finding, as plaintiff indicated that several of her past

16 | jobs required her to "handle, grab or grasp big objects," "write, type or handle small objects," or

17 | both, for eight hours per day. AR 285, 287-295. There is no indication in the record that

18 | plaintiff's left-hand condition grew worse during the relevant period; rather, her treatment notes

19 | suggest that her grip has strengthened as the ALJ found. *Compare* AR 1576 *with* AR 2007.

20 |         Accordingly, the ALJ gave clear and convincing reasons to discount Dr. Clure's opinions

21 | about the limiting effects of plaintiff's left-hand condition, and substantial evidence supports

22 | those reasons.

23 |

24 |

25 |

REPORT AND RECOMMENDATION - 12

1

CONCLUSION

2      Based on the foregoing discussion, the undersigned recommends that the Court find the

3  ALJ did not err in determining plaintiff to be not disabled, and therefore that it affirm the ALJ's

4  decision to deny benefits.

5      The parties have **fourteen (14) days** from service of this Report and Recommendation to

6  file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP)

7  72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for

8  purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation,

9  this matter shall be set for consideration on **February 22, 2019**, as noted in the caption.

10     Dated this 6th day of February, 2019.

11

12

13                                        _____
                                          Theresa L. Fricke
14                                        United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

REPORT AND RECOMMENDATION - 13